# EXHIBIT A

## COVER SHEET

E-FILED | 3/14/2025 3:52 PM
CC-20-2024-C-977
Kanawha County Circuit Clerk
Cathy S. Gatson

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF KANAWHA COUNTY WEST VIRGINIA

**Universal Wellhead Services Holdings, LLC v. Harry Berry**

**First Plaintiff:**
☑ Business   ☐ Individual
☐ Government   ☐ Other

**First Defendant:**
☐ Business   ☑ Individual
☐ Government   ☐ Other

**Judge:**   Stephanie Abraham

## COMPLAINT INFORMATION

**Case Type:**  Civil

**Complaint Type:**  Contract

**Origin:**   ☑ Initial Filing   ☐ Appeal from Municipal Court   ☐ Appeal from Magistrate Court

**Jury Trial Requested:**   ☑ Yes   ☐ No      **Case will be ready for trial by:** _____

**Mediation Requested:**   ☐ Yes   ☑ No

**Substantial Hardship Requested:** ☐ Yes  ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

    ☐ Wheelchair accessible hearing room and other facilities

    ☐ Interpreter or other auxiliary aid for the hearing impaired

    ☐ Reader or other auxiliary aid for the visually impaired

    ☐ Spokesperson or other auxiliary aid for the speech impaired

    ☐ Other: _____

☐ I am proceeding without an attorney

☑ I have an attorney:   Alex Zurbuch, 500 Virginia St. E., Suite 1100 , Charleston, WV 25301



EXHIBIT
A

## SERVED PARTIES

**Name:**      Harry Berry

**Address:**    266 Meadows Drive, Clendenin WV 25045

**Days to Answer:** N/A          **Type of Service:** Hold for Later Service

---

**Name:**      Maverick Energy Services, Inc.

**Address:**    2155 Park Avenue, Washington PA 15301

**Days to Answer:** 30          **Type of Service:** Secretary of State - Certified - Including Copy Fee

E-FILED | 3/14/2025 3:52 PM
CC-20-2024-C-977
Kanawha County Circuit Clerk
Cathy S. Gatson

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

UNIVERSAL WELLHEAD
SERVICES HOLDINGS, LLC,

      Plaintiff,

      v.                             **Civil Action No. 24-C-977**
                                        **Judge Stephanie Abraham**

HARRY BERRY, and MAVERICK
ENERGY SERVICES, Inc.,

      Defendants.

### SECOND AMENDED COMPLAINT

Defendant Harry Berry was previously employed by Plaintiff Universal Wellhead Services Holdings, LLC ("Plaintiff" or "UWSH"). During his employment with UWSH, Mr. Berry was approached by Defendant Maverick Energy Services, Inc. ("Maverick") and Maverick's owner, with whom Mr. Berry maintained a close personal relationship, about going to work for Maverick. Mr. Berry was initially hesitant about this arrangement, on account of his Employment Agreement (the "Employment Agreement"), dated October 31, 2014, which, *inter alia*, contained restrictive covenants preventing Mr. Berry from engaging in direct competition with UWSH. Maverick, its owners, and other representatives were keenly aware of Mr. Berry's restrictive covenants and obligations to UWSH. Yet, Maverick aggressively pursued Mr. Berry for employment, as his experience with UWSH had resulted in Maverick and Mr. Berry having extensive client contacts and access to UWSH's proprietary business information and confidential trade secrets.

Otherwise, Mr. Berry had also obtained from UWSH a Promissory Note (hereinafter, the "Note"), dated December 8, 2016, by which Mr. Berry obtained financing from UWSH to fund certain capital contributions to a related entity, Dove Wellhead, LLC ("Dove Wellhead"). As time went on, however, Mr. Berry's cautiousness with respect to the Employment Agreement faded,

and he eventually accepted employment with Maverick. What's more, Mr. Berry defaulted on the Note despite his continued and ongoing obligations to UWSH.

If it was not enough that Mr. Berry violated the clear terms of the Employment Agreement and defaulted on the Note, Mr. Berry and his new employer—Maverick—began acting in concert with one another to intentionally interfere with UWSH's employment contracts, customer contracts, and business relationships with UWSH customers. Not only that, but Mr. Berry and Maverick have also unlawfully misappropriated UWSH's confidential property and proprietary trade secrets and have used said property and trade secrets to unfairly compete against and steal customers from UWSH. In fact, another employee recruited to Maverick by Mr. Berry (which happened in multiple instances) went so far as to steal a physical piece of equipment belonging to UWSH, and Maverick is now using that stolen equipment to unfairly compete against UWSH.

Defendants must be held liable for their continuing unlawful conduct and actions against UWSH. In support of its Second Amended Complaint, UWSH states as follows:

## THE PARTIES

1.      Universal Wellhead Services Holdings, LLC, is a Delaware Limited Liability Company with a principal office of 5729 Leopard Street, Building 9, Corpus Christi, Texas 78408.

2.      Harry Berry resides at 266 Meadows Drive, Clendenin, West Virginia 25045.

3.      Maverick Energy Services, Inc. ("Maverick"), is a Pennsylvania corporation with a principal office of 2155 Park Avenue, Washington, Pennsylvania 15301.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to W. Va. Code § 51-2-2(b), insofar as this is a matter at law where the amount in controversy exceeds $7,500.

5.      Venue is proper in this Court because Mr. Berry resides in Kanawha County, West Virginia; the causes of action arose in Kanawha County, West Virginia; and, upon information and belief, Maverick transacts and conducts business in Kanawha County, West Virginia.

## FACTUAL ALLEGATIONS

### *The Promissory Note*

6.      On or about December 8, 2024, Mr. Berry was provided financing in the principal amount of $89,619.00 by UWSH. *See* Note (Ex. A) at 1.

7.      The financing was purposed to provide Mr. Berry with means to fund necessary capital contributions to Dove Wellhead. *Id.*

8.      The Note contains provisions that dictate when outstanding principal and interest amounts are due, including (a) at the time of termination of Mr. Berry's employment with UWSH, (b) the seventh anniversary of the effective date of the Note, or (c) upon acceleration of the Note. *Id.*

9.      The Note may be accelerated upon an Event of Default, which as defined in the Note, occurs where Mr. Berry has failed to pay all amounts due on the Note by its Maturity Date. *Id.* at 2.

10.     The Maturity Date was December 8, 2023. *Id.* at 1.

11.     In addition, the Note provides for the recovery of reasonable attorneys' fees and collection fees for prosecution of collection on the Note after default. *Id.* at 3.

### *Mr. Berry's Default on the Note*

12.     As of the date of filing, Mr. Berry is in default on the Note for failure to timely make necessary payment.

3

13.     Indeed, Mr. Berry has failed to pay *any* of the outstanding principal or accrued interest.

14.     His default continues to this day with an outstanding principal balance of $89,619.00 and an accrued interest balance of $17,701.30.

15.     These amounts remain payable to UWSH.

16.     Despite his continued default, and despite requests that he make arrangements to pay off amounts due on the Note, Mr. Berry continues to fail to satisfy his obligations.

### *Mr. Berry's Employment Contract*

17.     On October 31, 2014, Mr. Berry and UWSH entered into the Employment Agreement.

18.     The Employment Agreement provided for a Term expiration date of October 31, 2017, with an option to continue employment thereafter the Term of the Agreement upon mutual agreement.

19.     Pursuant to the Employment Agreement, Mr. Berry was employed in an executive sales capacity.

20.     Pursuant to the Employment Agreement, Mr. Berry received a favorable yearly salary.

21.     Pursuant to the Employment Agreement, Section 1.4 Duties of Fiduciary and of Loyalty, Mr. Berry "acknowledges and agrees that, upon termination of the employment relationship, [Mr. Berry] shall continue to refrain from using for his own benefit or the benefit of others, or from disclosing to others, any information or opportunities pertaining to [UWSH's] business or interests that were entrusted to [Mr. Berry] during the employment relationship or that he learned while employed by…[UWSH]."

4

22.    Pursuant to the Employment Agreement, Section 5.2 Value of Confidential Information and Access to Company Relationships, Mr. Berry acknowledged that UWSH's business is "highly competitive" and "agrees that he will not, at any time during or after his employment by [UWSH], make any unauthorized disclosure of any Confidential Information or may any use thereof or of the Company Relationships, except for the benefit of, and on behalf of, [UWSH]."

23.    Pursuant to the Employment Agreement, Section 5.5 Breach of this Article, Mr. Berry acknowledged and agreed that "restrictions in this Article do not terminate when Employee's employment under this Agreement terminates."

24.    Pursuant to the Employment Agreement, Section 7 Non-Competition, Mr. Berry agreed "that he will not at any time during his employment with [UWSH] and for a period commencing on the date of termination of his employment and continuing until the expiration of two (2) years (the "Non-Competition Period"), directly or indirectly, for himself or for others, within two hundred (200) miles of [UWSH's] office in Newcomerstown, Ohio, or in any other jurisdiction in which [UWSH] or any of its affiliates has, during the two (2) year period immediately prior to the date of termination of Employee's employment, made sales that compromise greater than 2% of the aggregate, consolidated revenue of [UWSH] and its affiliates: (a) engage in any activity, work, business, or investment in the industry or business that is involved in provided drilling and completion designs…or any other business that is directly competitive with activities conducted by [UWSH] or any of its affiliates during Employee's employment with [UWSH]…(b) render advice or services to, or otherwise assist, any other person or entity who is engaged directly or indirectly, in the Business; or (c) transact any business in any manner

pertaining to current or potential customers, suppliers, vendors of [UWSH] or any affiliate which, in any manner, would have, or is likely to have, an adverse effect upon [UWSH] or any affiliate."

25.     Pursuant to the Employment Agreement, in Section 7.2, Mr. Berry acknowledged that "the foregoing restrictions may limit his ability to engage in business similar to [UWSH's] business in specific areas of the world for the Non-Competition Period, but acknowledges that he will receive sufficient monetary and other consideration from [UWSH] hereunder to justify such restriction."

26.     Pursuant to the Employment Agreement, in Section 7.3, Mr. Berry understood and agreed that the "Non-Competition Restrictions" "to be reasonable and necessary."

27.     Pursuant to the Employment Agreement, in Section 8.1, Mr. Berry agreed that during his employment or thereafter for the Non-Competition Period, he shall not in any manner "attempt [to] directly or indirectly influence, induce, or encourage any such customer, vendor or business partner of [UWSH] to abandon, reduce, or materially change its business relationship with [UWSH]."

28.     Pursuant to the Employment Agreement, in Section 8.2, Mr. Berry agreed that during his employment or thereafter for the Non-Competition Period, he shall not "solicit or seek to hire any employee of [UWSH] or any manner attempt directly or indirectly to influence, induce, or encourage any employee of [UWSH] to leave the employment of [UWSH]."

29.     Mr. Berry's employment with UWSH ended on February 12, 2024.

30.     Following the end of Mr. Berry's employment with UWSH, Mr. Berry has taken up employment with one of UWSH's direct competitors, in violation of the Non-Compete provision of the Employment Agreement.

6

31.    Mr. Berry has continued to engage in well servicing and equipment sales and other related activities in direct contravention of the Non-Compete provision.

32.    Mr. Berry has called on direct clients of UWSH, resulting in clear breaches of the Employment Agreement and substantial damage to UWSH.

33.    For one example, a delivery from a prior UWSH client was delivered to a UWSH facility, only for the delivery driver to return the next day, advising that the equipment was intended to be delivered to the new company at which Mr. Berry works.

34.    Representatives of UWSH have, on numerous occasions, requested that Mr. Berry cease such activities that are in violation of the Employment Agreement.

35.    Mr. Berry has failed to heed such requests.

36.    Mr. Berry's actions have caused and will continue to cause severe financial harm to UWSH, including lost revenues, clients, and reputational harm.

### *Defendants' Interference with Contracts,*
### *Business Relationships, and Misappropriation of Trade Secrets*

37.    Mr. Berry has been a long-time close friend of Mr. Landry of Maverick.

38.    As noted above, Mr. Landry and Mr. Berry had extended discussions while Mr. Berry was at UWSH concerning Mr. Berry performing the same, or similar, work at Maverick—all while Mr. Berry was subject to the Employment Agreement.

39.    Maverick was aware of the Employment Agreement and the restrictive covenants to which Mr. Berry was subject.

40.    Despite this, Maverick continued efforts to court Mr. Berry to join Maverick, where Mr. Berry would perform services substantially the same as those that he performed for UWSH in a substantially similar geographic area.

7

41.     Despite Mr. Berry's hesitation to leave UWSH due to his restrictive covenants, he did leave UWSH for Maverick.

42.     Mr. Berry self-terminated his employment at UWSH on January 30, 2024.

43.     Upon information and belief, Mr. Berry immediately went to work for Maverick.

44.     Following his departure from UWSH on February 12, 2024, Mr. Berry and Maverick have caused significant and ongoing damage to UWSH.

45.     To that end, Maverick's interference with the Employment Agreement has resulted in the loss of Mr. Berry's employment at UWSH.

46.     But worse, Maverick's interference with the Employment Agreement has resulted in Mr. Berry doing precisely what he was forbidden to do by the Employment Agreement: calling on and commandeering UWSH's clients, working in an industry and geographic area he was restricted from, and directly recruiting other UWSH employees to join Maverick.

47.     In turn, Maverick has directly interfered with UWSH in the same manner.

48.     Through this interference, Maverick and Mr. Berry have misappropriated sensitive business information of UWSH, including, *inter alia*, confidential customer information, technical information, plans, patterns, and other proprietary material belonging to UWSH.

49.     And, in at least one instance, Maverick was provided with the use of an expensive piece of UWSH equipment—*i.e.*, a tool that was specially built for UWSH in order to help UWSH secure work from a client ultimately stolen by Maverick and Mr. Berry—that had been taken from UWSH by one of the very employees that Mr. Berry recruited to Maverick from UWSH.

50.     Despite requests, this equipment has not been returned to UWSH and, upon information and belief, is continued to be used for the benefit of Maverick.

8

51.    Maverick and Mr. Berry have employed the equipment and the misappropriated business information for the direct benefit of Maverick.

52.    The above-described conduct by Maverick and Mr. Berry has resulted in significant and ongoing damage to UWSH, including the loss of lucrative clients and client contracts.

**COUNT ONE**
**BREACH OF CONTRACT**
**THE NOTE**
**(Defendant Berry)**

53.    UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

54.    Mr. Berry has breached the terms of the Note, remains in default under the Note, and is liable to UWSH by failing to make necessary payments due under the Note.

55.    Based upon Mr. Berry's breach of and default under the Note, UWSH is entitled to immediate payment of the remaining unpaid principal and accrued interest balances, which, at the time of filing total $107,320.30.

56.    Additionally, UWSH is entitled to the recovery of reasonable attorneys' and collection fees, the sum of which shall be determined at a later date.

**COUNT TWO**
**BREACH OF CONTRACT**
**EMPLOYMENT AGREEMENT**
**(Defendant Berry)**

57.    UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

58.    After leaving employment with UWSH Mr. Berry has breached the Agreement's Non-Competition Provision.

9

59.     Mr. Berry now works for a direct competitor of UWSH, Maverick, which is in direct contravention of the Employment Agreement.

60.     Mr. Berry has marketed services and sales directly to UWSH's clients and customers, in direct contravention of the Employment Agreement.

61.     Mr. Berry has on numerous occasions solicited employees of UWSH and clients of UWSH at his new employment.

62.     As a result of Mr. Berry's breach of the Non-Competition Provisions, UWSH has incurred considerable damages, including but not limited to, monetary damages.

**COUNT THREE**
**MISAPPROPRIATION OF TRADE SECRETS**
**FEDERAL DEFEND TRADE SECRETS ACT**
**(All Defendants)**

63.     UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

64.     Defendants' conduct and activities described above constitute actual or threatened misappropriation of UWSH's cognizable and protected trade secrets, in violation of the federal Defend Trade Secrets Act, codified under 18 U.S.C. § 1836, *et seq.*

65.     UWSH has been, or will be, damaged as a direct and proximate result of Defendants' misappropriation of its trade secrets and/or threatened misappropriation of trade secrets in an amount to be determined at trial, including both the actual loss to UWSH caused by the misappropriation and additional unjust enrichment to Defendants.

66.     Further, Defendants' misappropriation of UWSH's trade secrets was malicious, willful, wanton, and done with an intent to injure UWSH and its legitimate business operations, such that UWSH is entitled to punitive damages and an award of attorneys' fees.

## COUNT FOUR
## MISAPPROPRIATION OF TRADE SECRETS
## WEST VIRGINIA TRADE SECRETS ACT
### (All Defendants)

67.     UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

68.     Defendants' conduct and activities described above constitute actual or threatened misappropriation of UWSH's cognizable and protected trade secrets, in violation of the West Virginia Uniform Trade Secrets Act, W. Va. Code § 47-22-1 *et. seq.*

69.     UWSH has been, or will be, damaged as a direct and proximate result of Defendants' misappropriation of its trade secrets and/or threatened misappropriation of trade secrets in an amount to be determined at trial, including both the actual loss to UWSH caused by the misappropriation and additional unjust enrichment to Defendants.

70.     Further, Defendants' misappropriation of UWSH's trade secrets was malicious, willful, wanton, and done with an intent to injure UWSH and its legitimate business operations, such that UWSH is entitled to punitive damages and an award of attorneys' fees.

## COUNT FIVE
## TORTIOUS INTERFERENCE WITH
## CONTRACT AS TO UWSH EMPLOYEES
### (All Defendants)

71.     UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

72.     In providing legitimate business services to its customers, UWSH maintains various contractual relationships with its employees, contracts to which Defendants are not parties.

73.     This includes UWSH's Employment Agreement with Mr. Berry.

11

74.     Defendants' conduct and activities described above constitute intentional tortious interference with UWSH's contractual relationships with employees.

75.     Defendants' conduct and activities described above are both the direct and proximate result of the significant damages that have been sustained by UWSH, which include, *inter alia*, loss of its employees, loss of economic activity, lost profits, and all other appropriate damages that are available under applicable West Virginia law.

**COUNT SIX**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT AS TO UWSH CUSTOMERS**
**(All Defendants)**

76.     UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

77.     In providing services to its customers, UWSH maintains contractual relationships with its customers, contracts to which Defendants are not parties.

78.     Defendants' conduct and activities described above constitute intentional tortious interference with UWSH's contractual relationships with its customers.

79.     Defendants' activities described above are the direct and proximate result of the significant damages that have been sustained by UWSH, which include, *inter alia*, loss of customers from UWSH, loss of economic activity for UWSH, lost profits sustained by UWSH, and all other appropriate damages that are available under applicable West Virginia law.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH**
**BUSINESS RELATIONSHIP**
**(All Defendants)**

80.     UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

81.    In providing services to its customers, UWSH maintains legitimate business relationships with its customers, relationships to which Defendants are not parties.

82.    Defendants' conduct and activities described above constitute intentional interference with UWSH's business relationship with its customers.

83.    Defendants' activities described above are the direct and proximate result of the significant damages that have been sustained by UWSH, which include, *inter alia*, loss of customers from UWSH, loss of economic activity for UWSH, lost profits sustained by UWSH, and all other appropriate damages that are available under applicable West Virginia law.

**COUNT EIGHT**
**CONVERSION**
**(Maverick)**

84.    UWSH incorporates all preceding paragraphs of this Second Amended Complaint as though fully rewritten herein.

85.    Defendants' conduct and activities described above constitute the unlawful taking of personal property belonging to UWSH, including an expensive piece of custom UWSH equipment that was stolen from UWSH by one of the employees Mr. Berry recruited to Maverick.

86.    Furthermore, Defendants have exercised both ownership and dominion over the converted personal property of UWSH.

87.    Defendants exercise of ownership and dominion over the converted personal property of UWSH is against the consent of UWSH.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Universal Wellhead Services Holdings, LLC, respectfully requests joint and several liability against Defendants, and more specifically requests:

13

A.     A declaration of breach of the Note and Employment Agreement and an award of all available damages available under the Lease;

B.     An award of injunctive relief prohibiting Mr. Berry's actions in contravention of the Employment Agreement and other appropriate injunctive relief;

C.     An award of damages against Defendants in an amount to be determined at trial;

D.     An award of exemplary damages as permitted by law;

E.     An award of punitive damages as permitted by law;

F.     An award of reasonable attorney's fees and costs;

G.     Entry of an appropriate protective order concerning discovery of trade secrets and other confidential business and proprietary information; and

H.     Any other relief the Court may deem just and proper.

PLAINTIFF DEMANDS A **JURY TRIAL** ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,

*/s/ Alex J. Zurbuch*
Alex J. Zurbuch (WV Bar No. 12838)
Blake N. Humphrey (WV Bar No. 14132)
Dylan J. George (WV Bar No. 14253)
FROST BROWN TODD LLP
500 Virginia Street East, Suite 1100
Charleston, WV 25301
Telephone: 304-345-0111
azurbuch@fbtlaw.com
bhumphrey@fbtlaw.com
dgeorge@fbtlaw.com

***Counsel for Universal Wellhead
Services Holdings, LLC***

14

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

UNIVERSAL WELLHEAD
SERVICES HOLDINGS, LLC,

       Plaintiff,

  v.                               **Civil Action No. 24-C-977**
                                          **Judge Stephanie Abraham**

HARRY BERRY,

       Defendant.

## CERTIFICATE OF SERVICE

    I, Alex J. Zurbuch, certify that on March 14, 2025, the foregoing ***Second Amended Complaint*** was served on all parties to this action via the Court's E-Filing System.

                         */s/ Alex J. Zurbuch*
                         Alex J. Zurbuch (WV Bar No. 12838)

0158354.0792487  4928-2610-7681v5

E-FILED | 3/14/2025 3:52 PM
CC-20-2024-C-977
Kanawha County Circuit Clerk
Cathy S. Gatson

## PROMISSORY NOTE

$89,619.00

December 8, 2016

FOR VALUE RECEIVED, Harry Berry, an individual ("**Maker**"), hereby promises to pay to the order of Universal Wellhead Services Holdings, LLC, a Delaware limited liability company (the "**Company**," together with its successors, assigns or transferees, "**Payee**"), the principal sum of $89,619.00, or so much thereof as may be outstanding hereunder, with interest thereon at the Stated Rate (hereinafter defined). Subject to the limitations set forth herein regarding the applicable maximum nonusurious interest rate permitted to be charged on this Note, accrued and unpaid interest on the unpaid principal balance of this Note shall be compounded quarterly. Both principal and interest are payable as hereinafter provided in lawful money of the United States of America at the address of Payee set forth below or at such other place as from time to time may be designated by the holder of this Note. The term "**Stated Rate**" as used herein shall mean a rate equal to two and one-half percent (2.5%) per annum, compounded quarterly. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the LLC Agreement (as hereinafter defined).

Maker is currently a member of Dove Wellhead, LLC, a Texas limited liability company ("**Dove Wellhead**"). Dove Wellhead is currently a member of Payee.

The amounts borrowed hereunder shall be used by Maker solely to fund Maker's capital contribution to Dove Wellhead which shall be used to pay Dove Wellhead's required capital contribution to Payee in accordance with that certain Amended and Restated Limited Liability Company Agreement of the Company, dated October 31, 2014, as such agreement shall be amended by that certain Second Amended and Restated Limited Liability Company Agreement, dated as of December 8, 2016, as the same may be amended or restated from time to time (the "**LLC Agreement**"), and for no other purpose.

Any unpaid principal under this Note and all accrued and unpaid interest relating to the principal of this Note shall be due and payable upon the first to occur of: (a) the termination of Maker's employment with Payee, (b) the dissolution of Payee, (c) the seventh anniversary of the date hereof, or (d) upon acceleration as provided below (any such event being the "**Maturity Date**").

By its execution hereof, Dove Wellhead hereby agrees that to the extent it receives any distributions under the LLC Agreement from Payee (other than tax distributions pursuant to Section 6.3 of the LLC Agreement), Dove Wellhead shall cause such pro rata portion of the distribution otherwise payable to Maker to be paid to Payee to offset any then unpaid principal of, and all accrued and unpaid interest under, this Note, to the fullest extent permissible by applicable law; *provided, however*, that no such offset or deduction shall be allowed in violation of any applicable law or which are subject to Section 409A of the Internal Revenue Code of 1986, as amended from time to time, and any successor statute or statutes. In the event any principal or interest is offset against amounts owed or distributable to Maker from Dove Wellhead, the amount offset shall be treated as first paid or distributed to Maker from Dove Wellhead and thereafter repaid by Maker to Payee in respect of principal or interest under this Note, and the parties shall not take any actions inconsistent with the foregoing characterization.

HOU:0027649/00001:1876234v1

**EXHIBIT A**

Upon the occurrence of (a) an Event of Default under the Security Agreement (defined below), or (b) the merger, consolidation, sale or exchange of all of the equity interests of Payee, the sale of all or substantially all of the assets of Payee or other similar fundamental change in Payee, Payee shall have the option of declaring all principal of this Note, and all accrued and unpaid interest thereon, to be immediately due and payable (an "**acceleration**").

This Note is secured by and entitled to the benefits of that certain Security Agreement, dated of even date herewith, as amended from time to time (the "**Security Agreement**") between Maker and Payee, as the secured party. Maker shall have the right to prepay, without penalty, at any time and from time to time, all or any part of the unpaid principal balance of this Note and/or all or any part of the unpaid interest accrued to the date of such prepayment, provided that any such principal thus paid is accompanied by accrued interest on such principal.

If, on the Maturity Date, Maker is unable to pay in full all outstanding principal, accrued but unpaid interest and/or accrued and unpaid costs and expenses to which the Payee is legally entitled under this Note, Maker shall be liable and Payee will have full recourse against any real, personal, tangible or intangible assets of Maker for such deficiency in an amount equal to (i) any accrued but unpaid interest under this Note at the Stated Rate, and (ii) the entire amount of the sum of (A) any outstanding principal, (B) any accrued but unpaid interest under this Note in excess of the Stated Rate, and (C) any accrued and unpaid costs and expenses under this Note and under the Security Agreement.

It is the intent of Payee and Maker in the execution of this Note and all other instruments now or hereafter securing this Note to contract in strict compliance with applicable usury law. In furtherance thereof, Payee and Maker stipulate and agree that none of the terms and provisions contained in this Note, or in any other instrument executed in connection herewith, shall ever be construed to create a contract to pay for the use, forbearance or detention of money, interest at a rate in excess of the maximum interest rate permitted to be charged by applicable law. Neither Maker nor any guarantors, endorsers or other parties now or hereafter becoming liable for payment of this Note shall ever be required to pay interest on this Note at a rate in excess of the maximum interest that may be lawfully charged under applicable law, and the provisions of this paragraph shall control over all other provisions of this Note and any other instruments now or hereafter executed in connection herewith that may be in apparent conflict herewith. The holder of this Note expressly disavows any intention to charge or collect excessive unearned interest or finance charges in the event the maturity of this Note is accelerated. If the maturity of this Note shall be accelerated for any reason or if the principal of this Note is paid prior to the end of the term of this Note, and as a result thereof the interest received for the actual period of existence of the loan evinced by this Note exceeds the applicable maximum lawful rate, the holder of this Note shall, at its option, either refund to Maker the amount of such excess or credit the amount of such excess against the principal balance of this Note then outstanding and thereby shall render inapplicable any and all penalties of any kind provided by applicable law as a result of such excess interest. In the event that the said payee or any other holder of this Note shall collect monies that are deemed to constitute interest that would increase the effective interest rate on this Note to a rate in excess of that permitted to be charged by applicable law, all such sums deemed to constitute interest in excess of the lawful rate shall, upon such determination, at the option of the holder of this Note, be either immediately returned to Maker or credited against the principal balance of this Note then outstanding, in which event any and all penalties of any kind under applicable law as a result of

2

such excess interest shall be inapplicable. By execution of this Note, Maker acknowledges that Maker believes the loan evinced by this Note to be non-usurious and agrees that if, at any time, Maker should have reason to believe that such loan is in fact usurious, Maker will give the holder of this Note notice of such condition and Maker agrees that said holder shall have ninety (90) days in which to make appropriate refund or other adjustment in order to correct such condition if in fact such exists. The term "**applicable law**" as used in this Note shall mean the laws of the State of Texas or the laws of the United States, whichever laws are applicable and allow the greater rate of interest, as such laws now exist or may be changed or amended or come into effect in the future.

Should the indebtedness represented by this Note or any part thereof be collected at law or in equity or through any bankruptcy, receivership, probate or other court proceedings or if this Note is placed in the hands of attorneys for collection after default, Maker and all endorsers, guarantors and sureties of this Note jointly and severally agree to pay to the holder of this Note in addition to the principal and interest due and payable hereon reasonable attorneys' and collection fees.

This Note shall bind Maker and any successors and assigns, and the benefits hereof shall inure to the benefit of Payee and its successors and assigns. Payee may assign this Note to any third party. Maker shall have no right to assign this Note without the prior written consent of Payee.

Maker and all endorsers, guarantors and sureties of this Note and all other persons liable or to become liable on this Note severally waive presentment for payment, demand, notice of demand and of dishonor and nonpayment of this Note, notice of intention to accelerate the maturity of this Note, notice of acceleration of this Note, protest and notice of protest, diligence in collecting, and the bringing of suit against any other party, and agree to all renewals, extensions, modifications, partial payments, releases or substitutions of security, in whole or in part, with or without notice, before or after maturity.

This Note and the rights and duties of the parties hereunder shall be governed for all purposes by the law of the State of Texas and the law of the United States applicable to transactions within such State.

THIS NOTE AND ALL OTHER CREDIT DOCUMENTS EXECUTED BY ANY OF THE PARTIES SUBSTANTIALLY CONCURRENTLY HEREWITH TOGETHER CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*[Signature Page Follows.]*

3

**EXHIBIT A**

IN WITNESS WHEREOF, Maker has duly executed and delivered this Note as of the date first above written.


_Harry Berry_ (signature)
HARRY BERRY

Address of Maker:

_266 MEADOWS DR_
_CLENDENIN WV 25045_

Address of Payee:

Universal Wellhead Services Holdings, LLC
5729 Leopard St., Bldg. 9
Corpus Christi, TX 78408
Attention: Chief Executive Officer


with a copy (which shall not constitute notice) to:

Dos Rios Partners, L.P.
205 Wild Basin Road S.
Building 3, Suite 100
Austin, TX 78746
Attention: Wayne Patterson

SOLELY FOR PURPOSES EVIDENCING ITS AGREEMENT TO BE BOUND BY THE SPECIFIC TERMS AND PROVISIONS IDENTIFIED HEREIN:

DOVE WELLHEAD, LLC

By: _(signature)_
Name: _AL Duell_
Title: _President/CEO_


PROMISSORY NOTE
SIGNATURE PAGE

**EXHIBIT A**



West Virginia E-Filing Notice

CC-20-2024-C-977

Judge: Stephanie Abraham

**To:**  Richard D. Owen
rdo@goodwingoodwin.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA
Universal Wellhead Services Holdings, LLC v. Harry Berry
CC-20-2024-C-977

The following amended complaint was FILED on 3/14/2025 3:52:48 PM

Notice Date:    3/14/2025 3:52:48 PM

Cathy S. Gatson
CLERK OF THE CIRCUIT COURT
Kanawha County
P.O. Box 2351
CHARLESTON, WV 25301

(304) 357-0440