**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNIVERSAL WELLHEAD SERVICES HOLDINGS, LLC,

        Plaintiff,

v.                                   CIVIL ACTION NO.  2:25-cv-00233

HARRY BERRY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Maverick Energy Services, Inc's ("Maverick") Amended Motion to Dismiss the Second Amended Complaint. (ECF No. 6.) For the reasons discussed below, Maverick's Motion to Dismiss, (ECF No. 6), is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

This matter arises out of a contract dispute. Defendant Harry Berry ("Mr. Berry") worked for Plaintiff Universal Wellhead Services Holdings, LLC ("Plaintiff"). (ECF No. 1-1 at 4.) His employment contract (the "Contract") contained a non-compete provision. (*Id.* at 7–9, ¶¶ 21–28.) This non-compete provision provided, *inter alia*, that for two years after Mr. Berry's employment with Plaintiff ends, he will not (1) engage in similar work within 200 miles of Plaintiff's office in Newcomerstown, Ohio; (2) "influence, induce, or encourage" any of Plaintiff's customers to

1

"abandon, reduce, or materially change" their business relationships with Plaintiff; or (3) "solicit or seek to hire" any of Plaintiff's employees.   (*See id.*)

Enter Maverick, who is evidently one of Plaintiff's "direct competitors."   (*Id.* at 9, ¶ 30.) Even though Maverick was allegedly aware of the Contract's restrictive covenants, Plaintiff claims that Maverick "court[ed]" Mr. Berry to join Maverick, where he would perform substantially similar services "in a substantially similar area."   (*Id.* at 10, ¶¶ 39–40.)   Mr. Berry allegedly acquiesced to Maverick's advances and terminated his employment with Plaintiff on January 30, 2024.   (*Id.* at 11, ¶¶ 41–42.)

Then, Plaintiff claims that Mr. Berry "immediately went to work with Maverick."   (*Id.*, ¶ 43.)   Once there, Plaintiff claims that Mr. Berry "call[ed] on and commandeer[ed] [Plaintiff's] clients, work[ed] in an industry and geographic area he was restricted from, and directly recruit[ed]" employees of Plaintiff to join Maverick.   (*Id.*, ¶ 46.)   From these actions, Plaintiff claims that Mr. Berry "misappropriated business information" of Plaintiff's, including confidential customer information, technical information, plans, patterns, and other proprietary material belonging to [Plaintiff]."   (*Id.*, ¶ 48.)   As an example, Plaintiff alleges that Maverick was able to use "an expensive piece of [Plaintiff's] equipment—i.e., a tool that was specially built for [Plaintiff] in order to help [Plaintiff] secure work from a client . . . ."   (*Id.*, ¶ 49.)

As a result, Plaintiff claims to have suffered "severe financial harm."   (*Id.* at 10, ¶ 36.) Consequently, Plaintiff filed the pending lawsuit, naming Mr. Berry and Maverick as defendants. (*See generally id.*)   Plaintiff asserted two claims for breach of contract against Mr. Berry only, (*id.* at 12–13), a claim for conversion against Maverick only, (*id.* at 16), and additional causes of

2

action for misappropriation of trade secrets and tortious interference with contract and business relations against both defendants, (*id.* at 13–16).

Maverick filed the pending motion to dismiss on April 17, 2025. (ECF No. 6.) Plaintiff filed a response, (ECF No. 8), and Maverick filed a reply, (ECF No. 11). Subsequently, the Court ordered the parties to file supplemental briefings on the forum selection clause and the choice-of-law provision included in the Contract.[1] (*See* ECF No. 41.) Plaintiff and Maverick both made respective filings, (*see* ECF Nos. 48, 52, 53), which were almost entirely unhelpful.

Nevertheless, this motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are

---

[1] The parties did consent to forum in the Southern District of West Virginia, (ECF Nos. 48 at 2; 52 at 1–2), alleviating the need for briefing on the issue of the forum selection clause. Therefore, Maverick's Motion to Dismiss, (ECF No. 6), is **DENIED AS MOOT** to the extent it argues for dismissal under the doctrine of *forum non conveniens*.

required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555, 570.

### III.    DISCUSSION

As an initial matter, the parties agree on the applicable law for Plaintiff's claims for misappropriation of trade secrets, (*see* ECF Nos. 48 at 14; 52 at 17), but disagree as to whether Plaintiff has sufficiently pleaded these claims, (*see* ECF Nos. 6, 8, 11).  Further, the parties disagree on the applicable law for the remainder of Plaintiff's claims against Maverick.[2]  (*See generally* ECF Nos. 48, 52, 53.)  Each matter is addressed in turn below.

#### A.  Misappropriation of Trade Secrets

The Complaint asserts claims for misappropriation under both the federal Defend Trade Secrets Act ("DTSA") and the West Virginia Uniform Trade Secrets Act ("WVUTSA"). Maverick argues that Plaintiff has failed to state a claim under either statutory scheme.   (ECF No. 6.)  Plaintiff obviously disagrees.  (ECF No. 8.)  As discussed below, the Court agrees with Maverick.

1.  Pleading Standard

As an initial matter, the parties seem to dispute the appropriate pleading standard for each misappropriation claim.   (*See, e.g.*, ECF No. 8 at 13 ("[T]o the extent that Maverick's Motion to

---

[2]  The Court will not address the claims of breach of contract asserted against Mr. Berry only because Maverick cannot move to dismiss on behalf of another party.

Dismiss implies that trade secret claims are subject to a heightened pleading standard, that is not so.").)   To be sure, there are different pleading standards for the DTSA and the WVUTSA, which are briefly addressed in tum below.

The DTSA requires the plaintiff to identify "with sufficient particularity" the trade secret it claims has been misappropriated.  *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025) (internal citations omitted); *see also Power Horne Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-00042, 2021 WL 3856459, at *13 (W.D. Va. Aug. 30, 2021) (collecting cases for the proposition that district courts in the Fourth Circuit have repeatedly held that the claimant must describe "the information constituting trade secrets" with some level of "specificity" to survive a motion to dismiss).[3]   At the pleading stage, this requires "describing the trade secret at a level of detail that enables a defendant to delineate that which he is accused of misappropriating . . . and that enables a court to determine whether the plaintiff has plausibly satisfied the reasonable secrecy and independent economic value requirements."  *Sysco Mach. Corp.*, 143 F.4th at 228 (internal quotations and citations omitted).   After all, "[n]either the defendant nor the court should be forced into a fishing expedition to find evidence of a valid trade secret in the pleadings."  *Id.*

Conversely, the WVUSTA does not have such a heightened pleading standard.   Thus, if "a plaintiff's trade secret misappropriation claim survives the defendant's Rule 12(b)(6) motion to dismiss," then "the plaintiff can 'unlock the doors of discovery' into the defendant's alleged misconduct."  *Makina v. Kimya Endustrisi A.S.*, No. 3:22-CV-00066, 2025 WL 1709679, at *12 (W.D. Va. June 18, 2025) (discussing a substantially similar state trade secret act); *see also*

---

[3] Conversely, Plaintiff only cites to one district court case that holds otherwise and certainly does not undermine a published Fourth Circuit opinion.   (*See* ECF No. 8 at 13 (citing *Creative Snacks, Co., LLC* v. *Hello Delicious Brands LLC,* No. l:17CV50, 2017 WL 4043564, at *10 (M.D.N.C. Sept. 12, 2017).)

*Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 653 (W.D. Va. 2017) (same); *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432, 447 (W.D. Va. 2024) (collecting cases for the same proposition).

As such, Plaintiff is not required to identify the alleged trade secret with "reasonable particularity" under the WVUTSA. Rather, at the motion to dismiss stage, Plaintiff need only allege facts, which taken as true, state a plausible claim under the WVUTSA. Nevertheless, even under this more lenient standard, Plaintiff has failed to plausibly state a claim under the WVUTSA—or the DTSA, for that matter.

2. Plausible Claim

In order to determine whether misappropriation occurred, the Court must first determine (1) whether there was a trade secret to be protected, and (2) if so, determine whether it was misappropriated. *See McGough v. Nalco Co.*, 496 F.Supp.2d 729, 739 (N.D. W. Va. 2007) (citing *Servo Corp. v. Gen. Elec. Co.*, 393 F.2d 551, 555 (4th Cir. 1968)); *CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 876 (S.D. W. Va. 2018) (citing *McGough*).

"The West Virginia and federal definitions of 'trade secret' are consistent and apply to all material—including information and compilations of information—bearing two characteristics." *Elgin Separation Sols., LLC v. Dillon*, No. 2:23-CV-00440, 2024 WL 3553850, at *4 (S.D. W. Va. July 25, 2024) (Berger, J.). The Fourth Circuit has described these characteristics as (1) the "independent economic value requirement" and (2) the "reasonable secrecy requirement." *Sysco Mach. Corp.*, 143 F.4th at 228. First, a trade secret must "[d]erive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." W.

6

Va. Code § 47-22-1(d)(1); *accord* 18 U.S.C. § 1839(3)(B) (containing materially identical language).   Second, it must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   W. Va. Code § 47-22-1(d)(2); *accord* 18 U.S.C. § 1839(3)(A) (requiring that "the owner thereof has taken reasonable measures to keep such information secret").   These requirements are "linked" because "the information's value 'lies in the competitive advantage over others that [the plaintiff] enjoys by virtue of its exclusive access' to it."   *Sysco Mach. Corp.*, 143 F.4th at 228 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984)).

In *State ex rel. Johnson v. Tsapis*, the West Virginia Supreme Court of Appeals ("WVSCA") adopted the six-factor test found in § 757 of the Restatement (First) of Torts to determine whether there was good cause to issue a protective order to prevent the disclosure of the defendant's alleged trade secrets.   419 S.E.2d 1, 1 (W. Va. 1992).   In an unpublished opinion, the Fourth Circuit expressed its belief that the WVSCA would also apply the *Tsapis* test to determine the *existence* of a trade secret.   *IVS Hydro, Inc. v. Robinson*, 93 Fed. Appx. 521, 527 (4th Cir. 2004).   Further, because the federal and West Virginia trade secrets statutes are "materially similar," this Court has applied the *Tsapis* test to claims under the DTSA.   *See Dillon*, 2024 WL 3553850, at *4.

The *Tsapis* factors include:

(1) the extent to which the information is known outside of the [Plaintiffs'] business;

(2) the extent to which it is known by employees and others involved in the [Plaintiffs'] business;

(3) the extent of the measures taken by the [Plaintiffs] to guard the secrecy of the information;

7

(4) the value of the information to the [Plaintiffs] and competitors;

(5) the amount of effort or money expended by the [Plaintiffs] in developing the information; and

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Tsapis*, 419 S.E.2d at 3 (internal citation omitted).    "[T]he absence of evidence as to any one factor does not necessarily preclude a finding that a trade secret exists."  *McGough*, 496 F.Supp.2d at 740 (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir.2003)). Rather, "[t]he factors should be viewed as instructive guidelines, weighed together in making that determination."  *Id.* (same).

Misappropriation occurs when a trade secret is acquired by improper means, or when it is disclosed or used by someone who knows or has reason to know that the trade secret was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  W. Va. Code  §  47–22–1(b). "Failing to prove the existence of a 'trade secret' dooms a misappropriation claim."  *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 769 (4th Cir. 2023) (citing *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993)).   As discussed above, though, at the motion to dismiss stage, a party asserting a claim for misappropriation of trade secrets "'must plead only enough facts to state a claim to relief that is plausible on its face.'" *Hawkins*, 301 F. Supp. 3d at 653 (quoting *Twombly*, 550 U.S. at 570).

Here, Plaintiff claims there was a "misappropriation" of "cognizable and protected trade secrets."  (ECF No. 1-1 at 13–14 ¶¶ 64, 68.)  More specifically, Plaintiff claims that Mr. Berry misappropriated "confidential customer information, technical information, plans, patterns, and other proprietary material belonging to [Plaintiff]."  (*Id.* at 11, ¶ 48.)   The Complaint also

8

includes an example of an expensive "tool that was specially built for [Plaintiff] in order to help [Plaintiff] secure work from a client." (*Id.*, ¶ 49.)

As an initial matter, Plaintiff's vague references to "technical information, plans, patterns and other [] material" obviously fail to plausibly state a trade secret, despite Plaintiff's superficial labels of "proprietary" and "confidential." While "customer information" and an expensive tool are a bit more specific, Plaintiff still does not allege facts that plausibly show that the independent economic value requirement or reasonable secrecy requirement are met. *See Sysco Mach. Corp.*, 143 F.4th at 228. An application (or lack thereof) the *Tsapis* factors supports this finding. There are no allegations regarding the extent to which the information is known within or outside of Plaintiff's business; the value of this information to Plaintiff or its competitors;[4] the efforts Plaintiff took to protect this information; or how easily it would be for others to properly acquire or duplicate this information. *See Tsapis*, 419 S.E.2d at 3.

Plaintiff notes that other courts have found that "customer information" constitutes a trade secret. (*See* ECF No. 8 at 14.) It is true that "marketing and sales materials, including customer lists, can constitute trade secrets under the DTSA," but plaintiffs alleging statutory trade secrets claims must nonetheless allege enough "factual detail about the unique nature of these materials" in order to survive the motion to dismiss stage. *See Power Home Solar, LLC*, 2021 WL 3856459, at *10. Indeed, unlike Plaintiff's allegations, courts have held that customer information is a trade secret when the complaint alleges *more* than mere "customer information." *See, e.g., Salomon & Ludwin, LLC v. Winters*, 741 F. Supp. 3d 398, 404 (E.D. Va. 2024), *aff'd in part, vacated in part*,

---

[4] Plaintiff's passing description of a tool as "expensive," (ECF No. 1 at 11, ¶ 49), is a far cry from alleging either the value of the information to the Plaintiff and/or competitors or the amount of effort or money expended by the Plaintiff in developing the information.

9

150 F.4th 268 (4th Cir. 2025)(finding that plaintiff had sufficiently pleaded its customer information was a trade secret because the plaintiff had "protect[ed] the information with 'several layers of user IDs and passwords[,]' [] its employees sign confidentiality agreements," and "the client information ha[d] economic value because a competitor could use it to poach clients"); *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 42 (D. Md. 2024) (holding that a "customer lead database constitutes a trade secret" because the plaintiff alleged that it "took reasonable steps to keep the information secret by limiting access to the database only to employees using their assigned ID and password," and that the information had independent economic value because the lead lists were "comprised of people who have already expressed interest in ClearOne services and provided certain confidential financial information . . . which ClearOne developed using its own research and marketing efforts[] [and] could be extremely valuable in the hands of a competitor"); *Safe Haven Wildlife*, 716 F. Supp. 3d at 447 (W.D. Va. 2024) (finding that the plaintiff had sufficiently pleaded that its customer information was a trade secret by alleging that it was "not known outside [of the company]" and was "valuable"); *Pearl Ins. Grp., LLC v. Baker*, No. 0:18-CV-02353-JMC, 2018 WL 4103333, at *4 (D.S.C. Aug. 29, 2018) (holding that "customer lists, contact information, policy expiration/renewal dates, premium amounts, and customers' insurance business needs" are trade secrets because, *inter alia*, the plaintiff alleged that it took reasonable measures "to keep such information secret, including requiring employees to sign confidentiality provisions in the Agreement, promulgating privacy and confidentiality provisions in its employee handbook, password-protecting its computer systems and communications systems," etc.); *Vessel Med., Inc. v. Elliott*, No. 6:15-CV-00330-MGL, 2015 WL 5437173, at *8 (D.S.C. Sept. 15, 2015) (holding that the plaintiff's "specialized

10

processes and procedures, methodologies, research, and marketing materials" were trade secrets based on the plaintiff's allegations concerning its "unique processes and methodologies which are not generally available to the public, and are protected by the company").

No, Plaintiff cannot simply declare generalized categories of information as "trade secrets," provide little to no information on how it constitutes such under the law, and expect the Court to blindly follow. *Cf. Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid NE Holdings 2 LLC*, No. 2:21-CV-00307, 2022 WL 4459475, at *13 (S.D.W. Va. Sept. 21, 2022) (holding that a county did not have the authority to declare that "any particular thing is a nuisance" that would not otherwise be considered as such under any law). Therefore, because Plaintiff has failed to plausibly allege the existence of a trade secret, it has also failed to state a claim for misappropriation of trade secrets under the DTSA or WVUTSA.

Accordingly, Maverick's Motion to Dismiss, (ECF No. 6), is **GRANTED** as to these claims.

### B. Choice of Law

"[I]n a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise." *Murphy v. Setzer's World of Camping, Inc.,* 2021 WL 302744 n.1 (S.D. W. Va. Jan. 29, 2021) (Chambers, J.) (internal quotations omitted) (collecting cases). Under West Virginia law, contractual choice of law provisions are presumptively valid. *See General Elec. Co. v. Keyser,* 275 S.E.2d 289,293 (W. Va. 1981); *see also Nickey v. Grittner,* 297 S.E.2d 441 (W. Va. 1982). Nevertheless, this presumption is not absolute. Specifically, "[a] choice of law provision in a contract will not be given effect when [1] the contract bears no

substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or [2] the application of that law would offend the public policy of that state." *General Elec.,* 275 S.E.2d at 293 (citing *Restatement (Second) of Conflict of Laws§* 187 (1971)); *see also Bryan v. Mass. Mut. Life Ins. Co.,* 364 S.E.2d 786, 790 (W. Va. 1987); *Manville Personal Injury Settlement Trust v. Blankenship,* 749 S.E.2d 329,336 (W. Va. 2013).

In this case, the choice of law provision in the Contract calls for application of Texas law. (*See* ECF No. 6-1 at 12.)   The parties dispute whether this choice of law provision is valid. Maverick argues that the choice of law provision is not valid because (1) the Contract has no substantial relationship with Texas, (ECF No. 48 at 11- 13), and (2) the application of Texas law would offend the public policy of West Virginia, (ECF No. 53 at 10- 12).   Plaintiff disagrees. (*See* ECF No. 52.)   Each of Maverick's arguments is discussed in turn below.

      1.  Substantial Relationship

"The state of the chosen law has some substantial relationship to the parties or the contract" when, *inter alia,* the state is "where one of the parties is domiciled or has his principal place of business." *Restatement (Second) of Conflict of Laws* § 187 (1971); *see also Shaw v. Dawson Geophysical Co.*, 657 F. Supp. 2d 740, 746 (S. D. W. Va. 2009) (Copenhaver, J.).   Here, the Complaint alleges that Plaintiff is a Delaware limited liability company with its "principal office" in Texas.   (*See* ECF No. 1-1 at 5.)   Thus, Texas has a substantial relationship to the Contract.

Maverick takes great issue with the premise that a state has a "substantial relationship" with a lawsuit "simply because its principal office is there."   (ECF No. 53 at 6–9 (arguing that this Court has misinterpreted cases from the WVSCA).)   Throughout its discussion, Maverick appears to conflate a *state of incorporation* with a state where an entity has its *principal place of*

12

*business*.  (*See id.*)   The former is simply where articles of incorporation are filed, whereas the latter is the "nerve center" or "headquarters" where a company's officers direct, control, and coordinate operations.   *See Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).   Certainly, the state in which one party directs operations—likely, including employment decisions—would have more of a substantial relationship to an employment contract than the state of incorporation.   Thus, Maverick's arguments regarding various cases, which do not discuss the state where a principal place of business is located, are unpersuasive.   *See, e.g., Gen. Elec. Co. v. Keyser,* 275 S.E.2d 289 (W. Va. 1981) (rejecting choice of law based on state of incorporation); *Brierly v. Commercial Credit Co.,* 43 F.2d 724 (E.D. Pa. 1929) (same); *United Divers Supply Co. v. Commercial Credit Co.,* 289 F. 316 (5th Cir. 1923) (same); *Corky Wells Elec., Inc. v. Pratt,* No. 1:19-CV-158, 2019 WL 10056967, at \*10 (N.D.W. Va. Dec. 5, 2019) (not discussing principal place of business).[5]

    2.  Public Policy

However, the application of Texas law may "offend the public policy" of West Virginia. *Gen. Elec.,* 275 S.E.2d at 293.   At least, Maverick raises the issue for the first time in its reply to Plaintiff's brief.   (*See* ECF No. 53 at 10–12.)   According to Maverick, "Texas law would offend West Virginia employment law which disfavors restrictive covenants and takes a skeptical approach."   (*Id.* at 10 (discussing *Pratt,* 2019 WL 10056967); *cf Sherrell v. FTS Int'l, Inc.,* No. 5:19-CV-181, 2019 WL 3082463, at \*4 (N. D. W. Va. July 15, 2019) (Bailey, J.) (noting that the public policy of West Virginia would be not offended by application of Delaware law to a contract because the states "interpret contracts in similar manner").)

---

[5] Further, contrary to Maverick's contention, the Restatement, which discusses the principal place of business, does not conflict with *General Electric,* which discusses the state of incorporation.   (*Cf* ECF No. 53 at 9, n. 3.)

13

Yet, Maverick does not actually explain *how* West Virginia "only permits a more constrained approach than what Texas allows." (*See* ECF No. 53 at 10-11 (citing no legal authority).) Further, because Maverick did not raise this argument in its original brief, Plaintiff did not have the opportunity to contest it. (*See* ECF No. 52 at 8 (noting that "Maverick fails entirely to engage with . . . public policy concerns. This is likely because there are no discernable public policy concerns").) Thus, because this issue is not fully briefed, the Court declines to resolve it at this juncture. *See Parsley v. Rushmore Loan Mgmt. Servs. LLC,* No. CV 3 :23-0525, 2024 WL 712873, at *9, n.6 (S. D. W. Va. Feb. 21, 2024) (Chambers, J.); *Spurling v. Metro. Life Ins. Co.,* No. 2:24-CV-00614, 2025 WL 1840669, at *12 (S. D. W. Va. July 3, 2025) (Johnston, J.) (declining to "act as an advocate for" attorneys).

### C. Moving Forward

*If* the choice of law provision is invalid, the laws of the jurisdiction with the most substantial contacts would govern. *See Restatement (Second) of Conflicts of Law,* § 145–146 (1971). Still, that would be difficult to determine given the scant allegations in the Amended Complaint. (*See generally* ECF No. 1-1.) While such a dearth of allegations would normally warrant dismissal under Rule 12(b)(6), the Court must first determine which state law governs.[6] Thus, the remainder of Maverick's Motion to Dismiss, (ECF No. 6), is **DENIED WITHOUT PREJUDICE**.

---

[6] Nevertheless, because Plaintiff's allegations are so lacking that the Court cannot even determine which law applies, Plaintiff has certainly fallen far short of demonstrating that it would be "likely to succeed on the merits." *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth four factors that a plaintiff seeking a preliminary injunction must establish); *see also id.* at 23 (explaining that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" (internal citations omitted).) Thus, Plaintiff's Motion for Preliminary Injunction, (ECF No. 7), is **DENIED WITHOUT PREJUDICE**.

14

The Court believes discovery may be helpful in resolving these issues.  *See M.D. Russell Constr., Inc. v. Consol. Staffing, Inc.*, No. 22-1420, 2023 WL 8798086, at *3 (4th Cir. Dec. 20, 2023) (collecting cases that deferred choice-of-law decisions until after some discovery). Accordingly, the parties may engage in limited discovery only as to the appropriate choice of law.

The Court notes that both parties acknowledged that this case presents "particularly thorny conflicts problems."  *See New v. Tac & C Energy, Inc.,* 355 S.E.2d 629 (W. Va. 1987).   However, Plaintiff is forewarned: this order for *limited* discovery is not a permit for a fishing expedition. "[T]o resolve particularly thorny conflicts problems," the WVSCA has utilized the standards set forth in the Restatement (Second) of Conflicts.  *Oakes v. Oxygen Therapy Services,* 363 S.E.2d 130, 131 (W. Va. 1987).   The *Restatement (Second) of Conflicts of Law,* § 145-146 (1971) provides various considerations to determine which state has the most significant relationship to the lawsuit.   The Court **ORDERS** that those considerations are to serve as guidance for the parameters of this limited grant of discovery.

The parties have until August 1, 2026, to complete the necessary discovery.  Following the close of discovery, the Court hereby **ORDERS** Plaintiff and Maverick to file supplemental briefing on the choice of law issue.  Maverick shall submit its briefing no later than August 15, 2026.   Plaintiff shall then have 14 days following Maverick's submission to file its brief. Maverick shall then have 7 days following Plaintiff's submission to file any reply.

### IV.    CONCLUSION

For these reasons, Maverick's Motion to Dismiss, (ECF No. 6), is **GRANTED IN PART and DENIED IN PART**.   The motion is **GRANTED** as to Plaintiff's misappropriation of trade secret claims, where are hereby **DISMISSED** under Rule 12(b)(6).   The motion is **DENIED**

**WITHOUT PREJUDICE** as to all other claims and arguments.    Additionally, Plaintiff's Motion for Preliminary Injunction, (ECF No. 7), is **DENIED WITHOUT PREJUDICE**.

Further, the Court **LIFTS** the stay and **DIRECTS** the Clerk to return this matter to the Court's active docket.  The parties are **ORDERED** to engage in limited discovery solely as it pertains to choice of law, as outlined above.  It is further **ORDERED** that the parties file supplemental briefing on the issue, as outlined above.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 17, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16